Thank you, Ms. Bender. Why don't you proceed? And before I do, do you want to reserve time for rebuttal? Yes, Judge McKee. With the Court's permission, I'd like to reserve three minutes for rebuttal. Okay. Good morning and may it please the Court. Lisa Bender appearing on behalf of Appellant Anthony Rivera. The primary issue before this Court is who bears the burden to prove the in-flight exception to governmental liability under Pennsylvania's tort claims statute. Settled legal principles instruct that the party who relies on the statutory exception has the burden to prove that exception applies. As the Pennsylvania Supreme Court put it in Bigelow, it is incumbent on the one who relies on the exception to set it up and establish it. I have a question here. Was the plaintiff here, was he, we're using the in-flight term, but at some point it suggested that he wasn't running at all, but he was simply in the street. Where was he and was he running or is that disputed? It's not disputed that Mr. Rivera was running from Mr. Woollard. It's disputed whether... Whether he knew that he was being chased. He had reasonable cause to know. Correct. That's correct, Judge McKee. And as this Court put it in Ivankovich, a party seeking shelter in an exception has the burden to prove it. And of course, the Supreme Court has said the same thing. It was against this decades old backdrop and not some anticipation of the Lindstrom holding five years later that the Pennsylvania legislature created a discrete exception from general vehicular negligence liability. And that's a textbook indication of an affirmative defense. The language used, of course, is provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection. If the plaintiff was during the course of the negligence in flight or fleeing apprehension or resisting arrest by a police officer. Given that language, Mr. Hobson should have had the burden to prove that this exception applied. And it was error for the District Court to require Mr. Rivera to prove that it did not. That error was clearly not harmless. This Court can reverse under Waldorf alone because the District Court misinformed the jury on the applicable burden of proof on the very issue here that the jury, on which the jury resolved the case. Help me understand the role of comparative negligence, if any, because you want us to basically find that you're entitled to a verdict based upon negligence per se. But the District Court had concerns because it seemed like the doctrine of comparative negligence complicated this. Could you address that, the role of comparative negligence, if any, and how that precludes you from getting a ruling based upon negligence per se? Sure. So we're seeking a remand in a new trial, and we also are seeking for this Court to reverse the denial of partial summary judgment on negligence per se. Negligence per se just speaks to duty and breach. It does not speak to the other elements of the negligence claim. Okay, I got you. Sure. And if you look at the verdict in the case, you'll see that that was a question that the jury never reached in this case, and it could certainly reach that issue on remand. I want to go to your assertion that the error was not harmless. I'm not sure about that, because unless the jury thought that the evidence in flight was exactly 50-50, then why would a different instruction as to the burden of proof have changed the outcome? I tend to agree with you on the burden of proof, but I'm not sure that it was harmless. Judge Porter, that argument proves far too much, because we must assume that we have these burdens of proof for some reason, and if they don't make a difference, it's unclear what role they play. And I think if you look to the Supreme Court's language in Meacham, where it says the preponderance of the evidence standard really comes into play where the evidence is close, there's some doubt. And so in those cases, the jury will say, well, when there's doubt, I'll resolve this in favor of the party who had the burden of proof. And of course, we presume that the jury is going to follow the instructions as given by the district court, which he did here. And again, I think Waldorf, the language in Waldorf alone, resolves that and says, of course, there's no way to know for sure. We can't know for sure, but here where it's not one of those cases where there's a number of findings, and through some arithmetic, we can kind of figure out if the burden was different, the jury would have reached the same result. Here, the jury made a single factual finding, and the district court misapplied, misinstructed the jury on the burden of proof on that very factual finding, which resolved the entire case. So I think it would be quite extraordinary in these circumstances to say that such error was harmless. And I think, you know, even under the more general standard for harmless error for instructional errors, we get the same answer. If you look to the record in this case, it's far from, you know, my friend's argument that it goes one way. Mr. Rivera testified to the jury that it was dark. He didn't hear anybody yelling that they were police. He just heard some stranger say, hey, yo, and start charging him, that that person didn't identify himself as police. And of course, when he saw someone running on foot, he was not expecting foot patrol in the area, and both officers testified to the same thing. Mr. Woolard himself, just looking at his testimony, testified that he identified himself as police, you know, at 2.30 in the morning once from 60 yards away, that his uniform was not labeled police, but was in fact designed in part to be inconspicuous at night. And that, you know, Mr. Woolard didn't think that Mr. Rivera ever realized they were police and testified that, you know, Mr. Rivera kept asking for the police. And I think that's why the district court determined, rightly in this case, that in denying Mr. Hobson's Rule 50 motion on the very issue was that this was closed, you know, it was going to come down to credibility determination between Mr. Rivera and Mr. Woolard. So our position is that if the jury knew it was Mr. Hobson's burden to prove Mr. Rivera was in flight. But the question, let me pause you here on this point. I mean, the question that the jury was posed to the jury was, at the time of the accident, would a reasonable person have known he was being asked to stop or otherwise realize he was being pursued by police? That was the question. Okay. And they answered the question. Yes. All right. We all agree with that. So why isn't the key issue here, the substantive legal standard as to whether or not it was that Rivera, your client, had reasonable cause to know that the police were in pursuit? That's the question. And if the jury instruction properly put that question to them, does it really matter under the harmless error standard, whether or not the judge may have misstated who had the burden? Yes, I think it does. It does matter, Judge Fischer. We presume that the jury follows the instructions given by the district court. And it's not as if the verdict question was given to the jury in isolation. If you look to if you look to JA 860, the district court clearly instructs the jury that Mr. Rivera has the burden of proof on the exception that the in-flight exception is part of that. And then it says, you know, if you answer the question that Judge Fischer just quoted back to me, under the standard I just told you, then you should find that he wasn't in flight. And so the burden certainly matters because it's effectively requiring Mr. Rivera to prove an element of his claim that he never needed. Yeah, but help me understand that because again, the jury is concluding that he knew that he was being pursued by police. Doesn't that, and let's assume that the officer had the burden of proving the in-flight exception. If the jury concludes that your client knew he was being pursued by police, doesn't that automatically give the answer in terms of the application of the in-flight exception? How could they reach that factual conclusion and then still find for you on the ultimate question of the in-flight exception? So Judge McKee, the only way the jury can make a factual finding is under the burden of proof as provided by the district court. And so to the extent the issue is closed or if there's doubt, the jury will resolve that issue in favor of the party without the burden of proof. But I do think if you look at the district court's instructions as well, the district court doesn't just ask the simple question, did Mr. Rivera know? It wasn't a subjective factual finding. It was the government's burden to show that it took some action to put a reasonable person on notice that the police were pursuing that person or otherwise being asked to stop. So there was testimony both ways on this issue. You know, with Mr. Rivera clearly testifying that he was not. So to the extent that the jury had some doubts, they would resolve those. And of course, under Waldorf, it's presumptively reversible just because it undermines any factual finding they may have reached. Right. I understand. Okay. To flip the burden of proof there. I'll turn to negligence per se, unless the court has further questions on. No, go ahead. Okay. So here, if the court agrees on the instructional error, it should also reverse the district court's denial of partial summary judgment on the issue of Mr. Hobson's negligence per se. There is simply no meaningful dispute of material fact on Mr. Hobson's negligence per se. Mr. Hobson drove the wrong way on a one-way street without overhead lights with sirens, and that's a plain violation of the vehicle code. So there's no factual issue for the jury to determine with respect to whether Mr. Hobson was negligent. And this goes to your prior question, Judge McKee. The jury needs to determine, was that negligence the factual cause of Mr. Rivera's injuries? And was Mr. Rivera contributory negligent by how much? Mr. Hobson has not identified a dispute of fact with respect to the negligence per se issue here. And for the same reason, the court should reach that issue. Mr. Hobson conceded every fact relevant to his violation of the vehicle code and under law, that's enough for negligence per se. Okay. Thank you. And if there's some other questions, I know you've got a, maybe a few seconds left, but it sounds like you're basically made an appointment to your Mr. McMahon. Mr. McMahon? Good morning, counsel. May it please the court. My name is David McMahon. I represent defendant appellee officer Joshua Hobson in the Bethlehem Police Department. And I was involved in trial, and I do want to talk a little bit about some of the evidence that came into the second issue about harmless error. But let me first start with the burden of proof. And as I think both counsel conceded, there is not a clear pronouncement by the Pennsylvania courts as to who should have the burden of proof. However, I do think there's some indications from both case law, as well as the structure of the statute, that the burden of proof for proving all of the elements of plaintiff's claim under the vehicle exception falls on plaintiff. Well, you put the rabbit in the hat when you define the in-flight exception as an element of plaintiff's claim. That's what we're trying to decide. Is it an element? Is it an affirmative defense? Does it come in under the doctrine of a superstating causation? Where does it fit? And it does seem from the structure of the statute, which you mentioned, that it's not an element, but it is an affirmative defense. Well, Judge McKee, I would respectfully disagree. I think that it is one of the elements, because in structure, and this portion was added later from the original TOR Claims Act, it's actually consistent with five other exceptions under. There's a total of nine. Let me ask you then, does that mean that a person in this situation would have to introduce evidence not only that he was not knowingly in flight to avoid a pursuit, but they'd also have to prove all of the other eight exceptions? Because once you say that those nine things are elements, then the defendant's got to prove all those nine exceptions. No, I'm sorry. I probably wasn't clear. There's nine exceptions to a governmental immunity. The exception, which is what we're talking about, it has language that says that if there's negligence in the operation of a motor vehicle by a police officer or a government official, there can be liability provided that, and then it goes on and talks about the in-flight. The reason why I believe it is an element is twofold. Number one, as I said, it's consistent with at least four of the other exceptions. Each of them contain the same language. They pre-existed this addition to the vehicle exception. The real property goes and says there can be negligence for the care, custody, and control, and then it starts with except that, and it lists some conditions that the plaintiff has to prove. The same thing under the trees, traffic controls exceptions. There's negligence, except that plaintiff has to prove and list the elements. So I think in with four exceptions that preceded it, number one. Number two, in order to fit under any or have a viable claim that gets around the governmental immunity, there's three things that have to be established. One, the damages were available at common law. Two, there was negligence by a governmental official. And three, it fits the elements of one of these exceptions. What the district court found, which followed two decisions, one from the Pennsylvania Supreme Court in 2000, that's the Lindstrom case, as well as a 2014 case from the Pennsylvania Commonwealth Court, White versus Philadelphia, is the threshold issue is does an officer owe a duty to someone who's fleeing? And the Commonwealth Court or Supreme Court in Pennsylvania and Lindstrom went through the analysis and went through five different factors to look at and concluded and held that if someone's in fleet or fleeing from the police, they're barred and there's no duty owed by an officer and gave all the reasons for it. This kind of backs though into what Ms. Bender was arguing, and that is this, it's kind of set up and the rabbit's already in the hat. Once the instruction is given, in terms of the burden of proof, then that kind of sets everything up that you're saying. But if there's a real issue, in terms of whether or not he was actually knowingly fleeing from police, then what you're saying doesn't follow that. What you're saying that argument is built upon a factual conclusion. The problem with that is, it's like House of Cards, that factual conclusion does arrived at perhaps at an improper jury instruction. Well, no, because it's not whether Mr. Rivera knew, it's whether a reasonable person, Mr. Rivera was... Same thing, okay. It's object to that subject, but it still goes to the burden of proof. Well, it does, but I think the burden of proof, much like all the other elements of the exception are plaintiffs, this is one additional element that unless Mr. Rivera can convince a jury by that ever slight tipping of the scale that the officer owed a duty to him, it doesn't follow that there's any liability. That's circular though, because again, you're equating elements. And I did also want to mention, you used the term burglary in terms of what happened back at the bar in your brief. I think it's 11 times, I counted nine, my clerk said it was 11 times. That issue was specifically brought up at trial and the court specifically refused to allow the term burglary to be used because it wasn't at all clear that what happened before the chase here was the level of a burglary. So at least I don't know, I haven't talked to my colleagues about it, you did not, your brief does not speak well for you in terms of using burglary the way you did in the brief. It was less than professional and I think it totally improper and probably boarding on, and I won't say it ethical, although it probably wasn't ethical, but it's clearly improper to raise the specter of burglary here. Well, your honor, the court changed the term that was told to the jury because the call that came in was specifically attempted burglary in progress, which is what the officers believed and knew and they responded. The court, in order to take some taint away from that, had us use the term disturbance. So the call was called in as a burglary and that's what the officers believe they were responding to. So that's why I used the term burglary because that was the original term and the term the court used. So in terms of the burden of proof, I'm just going to finish up and I do want to talk about harmless error because I think that's significant. The burden of proof in both Lindstrom and White talked about stepping back that there's not, officers don't owe a duty to someone who's fleeing. That's consistent with the structure of the statute. That was the basis the trial court found both because of these cases, there was no duty in the first instance, but secondarily, the Tort Claims Act, and there's case laws very, very clear on this, the exceptions and exceptions to immunity to be strictly applied. So consistent with those two reasons. Is this an exception to immunity or is it an exception to liability? It seems to me it's an exception to liability. In that case, the strict application goes out the window. It's not an exception to immunity. Well, there's immunity and the plaintiff with all these exceptions has to prove all of the elements. And in this one, the argument the trial court agreed was that you should first have to establish a duty, which case law in Pennsylvania, but there's liability unless the exception applies. Well, it actually works. I think it works the opposite. If it works the opposite way, then it is an exception to immunity and not an exception to liability. Right. Yes. It's an exception to, right. So the strict application of how we strictly interpret exceptions to liability under the immunity scheme then would not apply because that's what we have here. Right. So I'm going to turn to the harmless error because there's already been some argument and discussion about that. And this is not, as counsel, my esteemed opponent said, a close call. This isn't one where there was a fair weighing of evidence on either side. The evidence that the plaintiff presented to a jury that a reasonable person wouldn't have known that he was fleeing from the police trial testimony essentially said I wasn't in my right mind at the time. And I cross examine him because he gave different answers and different explanations at his deposition and why that's significant is his case largely hinged on his credibility. If a jury believed that a reasonable person and his shoes would not have known the police were attempting to detain him. The evidence on the other side was, was overwhelming. This was not a close call. We have testimony of two women who were the bartenders who were at the happy tap who spent specifically testified that is Mr. Rivera was banging on the windows demanding to be given entrance. They warned him if you don't leave, we're going to call the police. And one of the witnesses, I believe it was Ms. Jubilees, her mother daughter said, I must have said that at least five to 12 times she had difficulty estimating how many they were terrorized. Mr. Rivera, among other things, threatened to get them when they left the bar later that night and indicated that he was a goon, which implies that he's part of a gang. So these two women were absolutely terrorized. So they tell him we're going to call the police reasonable person would be on notice that the police may be called. Yeah, but when the police came and drove by without stopping, doesn't that change things? I'm sorry, your honor. Doesn't that change things? The police came and kept on going did not do anything to Rivera. Well, that's about that's about eight additional steps before that happens. And that is an important point because Mr. Rivera moments before he ran saw a Mark Cruiser drive by and you can see it on the video, albeit the video is not the most precise video thought they were there for him. Now, why did he think they were there for him? Well, one, Mr. Billies and Miss Soto told him we're going to call the police. He acknowledged that he knew what they said, because he referred to them as snitches, someone who's called the police. He continues. So number three, they tell him we have called the police, to which he again responds that he acknowledges that he knows the police are on their way because he calls them snitches again. The Mr. Billies and Miss Soto testified they heard sirens. So additional evidence that a reasonable person having been forewarned the police were coming and hear sirens, a reasonable person may conclude that they're there for him. Officer Willard, who was arriving on foot, yelled out to Mr. Rivera and there were two other gentlemen, by the way, just not to confuse things, but they were outside the bar as well. I believe they were boyfriends of the two women inside. But Willard yelled to them, yo, stop, stay right there. Bethlehem police identified himself. As he draws closer, and you can see it both on the video as well as two photographs, which are found at the appendix of 940 and 941, showed how close Officer Willard was when Mr. Rivera began to run. He was in full uniform. It wasn't an undercover or plain clothes. He was in full uniform. Yeah, that brings up an interesting question that I hadn't thought of before. Because the officer who struck Rivera obviously was in an unmarked car with no siren or anything. Does the awareness that one is fleeing from police have to go to the person who is the actual pursuer? Or generally, if the person knows that they're fleeing from an officer, and another officer pursuant to a vehicular violation runs them down, does it go that far, the exception? And I hadn't thought about that until just hearing your argument. It seems to me that's a real question. I'm not at all sure the answer to it. But it would seem in terms of the scheme of the immunity statute, the awareness that you're being pursued would have to go to excuse the conduct of the person who actually runs you over. Otherwise, it wouldn't make a lot of sense. No, I think that the seminal issue is what a reasonable person know rather than staying in place and allowing the officers to do what they need to do, handcuff, question, what have you. The focus is on has a reasonable person in Mr. Rivera's shoes fled to evade the police. It doesn't specify which officer. Well, you could argue that. But the history of the statute, and you're clearly more familiar with that than I am, arose from a very specific case, which made no sense in anyone's mind, where a person was knowingly fleeing from arrest, was injured, turns around and sues the officer who injured him, which is insane. And this proviso was put in to eliminate that situation from happening in the future. I guess that cuts both ways. It goes to your point. It's consistent with your point. And I guess it's also consistent with the argument that the awareness as to the pursuit has to go to the fact that you know the person who's chasing you. Objectively, a reasonable person would know the person chasing him or her. That's not me. I'm glad you heard that. I thought it was good. I don't think it cuts it that fine. It's essentially it's focused on if the person's fleeing, or a reasonable person knew they're fleeing, then they're barred from bringing a time here. The white cases, which is one we both cited, there were two cases out of Pennsylvania, we talked about Lindstrom and White. And White is a case where, in fact, the question was put to the jury. And the jury was given the information that the plaintiff had, the information the officer claimed. There was a dispute just like in this case. And the jury concluded in that case that a reasonable person in Mr. White's shoes would not have known he was being pursued by the police. Now, the opinion doesn't say which party had the burden of proof, but the question was posed very much like Judge Fischer had mentioned earlier. It was a question that a jury had to decide regardless of whether the instruction didn't specifically say who had the burden. So, to the point that, you know, this just is unfair to Mr. Rivera, it works. A jury very well could have believed him despite this avalanche of evidence on the other side. I've gone through some of it. The additional things is that there was testimony. That was me. That was my 15-minute timer. But I know you're reaching for my phone. Yeah. But I think going back to the burden of proof, if you take the evidence and the jury heard it, this was not a close call. Mr. Rivera essentially had his word that he didn't know was the police. And Mr. Rivera admittedly was extremely intoxicated and gave conflicting versions of what he saw and recalled at his deposition in his trial. So, this was not a close call, whether the burden was 50.1 percent one way or 50.1 percent the other way. Mr. McMahon, let me ask you this one question on the harmless error standard. You know, how do we know the jury didn't say to itself, the evidence is evenly matched, but the burden is on Rivera, said it's break the tie in Officer Hobson's favor. How do we know that didn't happen? Well, I suppose we don't know that other than there was about 20 pieces of evidence that a reasonable person would have known darn well the police were there for him. And there was multiple witnesses. We had lay witnesses and evidence on one side and Mr. Rivera on the other side. So, I don't think with all due respect, this was a close call at all. It came down to whether they believed Mr. Rivera. If they believed him, they would have found no to that question and gone on to the additional questions. If they believed him or they didn't believe him and they believed this avalanche of evidence on the other side, they answered yes and that concluded the case. So, I think it was, this was a case where I, while I do accept that I think it's unclear from case law who had the burden, I still believe and I agree with the trial court that the burden laid with plaintiff. But even so, I think this was a classic case of harmless error. And unless your honors have any questions, given my alarm that went off, I'm out of my 15 minutes. Thank you, Mr. McMahon. Ms. Bender, let me ask you this. What you just heard, Ms. Bender, from Mr. McMahon about testimony, I am a goon. I'm referring to them as snitches. And I don't know the record that well. What was the testimony around that when he said provocatively to the folks inside, I'm a goon? Was it clear, and maybe I should have asked Mr. McMahon that, that people inside understood that term the same way Mr. McMahon has just represented it, that basically that means I'm tied up with a gang or a member of a gang where I've got a connection and you're snitches? Judge McKee, I'm not sure that's clear from the record. What the bartenders testified was that they told Mr. Rivera, look, if you don't leave, we're going to call the police. I mean, he had given them his driver's license. It's not as if he was terrorizing these women. He was saying, I'm 21, let me in. But in any event, that's not relevant to the harmless error question because as the district court- No, but it goes to what a reasonable person would have believed, though. It's very relevant to that. Right, and as a district court- He's putting himself forward as, either you're going to let me, if you're going to deal with me, I'm going to deal with you, if that's the scenario. And then he's told, look, you get out of here, I'm calling the police. He then says snitches and a cop car shows up. Then you got a really different scenario in terms of what a reasonable police person would have believed. The bartender certainly told Mr. Rivera, if you don't leave, we're going to call the police. It was quite disputed at trial how many times they told him, and that's in the brief. But as the district court determined here in a well-reasoned determination that's not under review, Mr. Rivera then left, saw a cop car drive by that didn't stop and determined- A mart car, who he knew was a police officer. Exactly. Didn't stop, moved on and determined, okay, they've realized that there's no disturbance here. And then he saw the officer who my friend emphasizes was in his uniform, but that same officer- When did that happen? In relation to him telling folks inside, you're snitches, I'm a goon. In relation to that conversation, when did the marked car drive by? It's not clear how long, but it was the first they said, if you don't leave, we'll call the police, testified, I think as well, that after that time, a marked police car drove by and determined not to stop. And then as was argued at trial and as the district court determined the jury might credit, Mr. Rivera realized that, okay, if the police came, they didn't stop, they weren't here for me. And then there was a completely separate person charging him on foot who didn't identify himself as a police officer whatsoever, ran at Mr. Rivera without identifying himself. And Mr. Rivera ran from whoever that stranger was. And I think- And that's when he was hit back. It looks like the officer didn't even see him. Correct. The officer had no idea whether, it's not as if Mr. Hobson was in pursuit of Mr. Rivera, he didn't know if he had hit him or a random pedestrian. But I do want to get to my friend's point that there was an avalanche of evidence on one side and just Mr. Rivera on the other. That's not true. And in any event, it doesn't matter. It's not about you putting on nine and in fact, they're instructed not to weigh the evidence that way. It's a credibility determination. And the district court held against my friend on this issue and said, no, it's not all one way. This is a close call. It goes to the jury, whether they believe Mr. Rivera, that the officer did not identify himself or whether they believe these other witnesses that he did. And as the district court said, this case is not about what happened in the street. This case was about Mr. Hobson's negligence and what happened in the street. Now, there's a connection there because what happened in the street and how a reasonable person would have perceived the circumstances in the street, that is directly happened, tied to what happened at the bar. Had he just kind of said, come to the door and said, hey, you know, I'd like to come in and get a drink or two. I'm 21 today. I'm here to celebrate. I'd like to have a brewski. And they said, I'm sorry, we're closed. And he left. That's one scenario. But if there's this commotion, and we can't characterize the commotion because I understand it was contested. But arguably, that would create a circumstance whereby a reasonable person would have caused either being pursued. I understand the uniformed police officer driving by cuts in your favor on that. But I just want to say quickly that if you look to the white case, it's an objective standard. It's not about the plaintiff's subjective thoughts. It's the officer has to make the showing that he took some action to put a reasonable person on notice that the police were coming. So it's not about what and that's not how the case was instructed to the jury. It's about did the officer take some action to put a reasonable person on notice that the that the police were on their way and and this, you know, Mr. McVean tested, you know, obviously credits the bar tenders testimony that it was a big commotion. They were scared. That's not at all how Mr. Rivera told the story. He said, I slid my ID under I said serve me I'm 21, you know, 21st birthday, but not nothing like the nothing like the bartenders testified. And so we don't know what the jury would have determined had they had they had the jury been told it's not Mr. Rivera's burden to prove he was not in play. Mr. Hobson needs to show that the police took some objective action to put a reasonable person on notice that that the police were on their way. And I think that this court's decisions in Waldorf, which was just exactly about who had the burden of proof the government or the plaintiff on reasonableness and the Supreme Court's language in Meacham, which says the preponderance of the evidence standard really matters when when the jury isn't sure that where there's some doubt they resolve it in the other direction. This case isn't about was Mr. Rivera an angel that night. Mr. Rivera will be has paid and will pay the consequences for this night for the rest of his life. But he has never had a jury trial with the correct legal standard that he is entitled to to determine whether Mr. Hobson's negligence played any role, and if so, how much of a role and I think it'd be quite extraordinary to say in a case with one single factual finding with the burden placed on the wrong party that such an error was harmless. Thank you. Thank you, Mr. Take a matter under advisement.